Matthew M. Levy, J.
The defendant moves for dismissal of the complaint for legal insufficiency (Rules Civ. Prac., rule 106, subd. 4). The action is in libel, and the plaintiff alleges the following:
The plaintiff was the doorman at certain premises where the defendant was a tenant. The defendant wrote and published a letter (a photo static copy is attached to the complaint), in which *617 the defendant states that his “ suitcase disappeared from the lobby and was found back couple of hours later in our apartment. * * * It is apparent that somebody who had the key to our apartment placed the suitcase inside after we left. For the security of our apartment and the other tenants I feel it would be important that you kindly investigate this matter. Will you also at my expenses change my lock and give the new key to my office.” The letter was published of and concerning the plaintiff ; it was false and defamatory; the defendant intended to and was understood by the readers of the letter to charge the plaintiff with the commission of the crime of larceny and/or unlawful entry; the defendant was motivated by actual malice and willfully intended to injure the plaintiff in his good name and reputation and sought thereby to procure the plaintiff’s discharge from his employment. The plaintiff has been injured in his name, reputation and social standing.
In support of his motion to dismiss, the defendant argues that there is no reference in the letter to the plaintiff, that there are no per se defamatory statements contained therein, that the plaintiff has failed to plead a “ satisfactory innuendo ” and has failed to plead special damage. There is no issue before me of defense by way of truth, privilege, justification or otherwise. The only question is whether the complaint on its face states a cause of action.
It is correct, as urged by the defendant, that there is nothing in the letter that would in any way indicate that it was the plaintiff of whom the communication was written. There is indeed nothing, whatsoever, that would tend to support the allegation in the complaint that, when he wrote the letter, the defendant was directly or indirectly, expressly or impliedly, referring to the plaintiff. The plaintiff is not mentioned in the letter by name, description, or otherwise. But, in basing his motion for dismissal of the complaint upon that ground, the defendant has overlooked rule 96 of the Buies of Civil Practice, which provides: ‘ ‘ Pleading in libel and slander. In an action for libel or slander, it is not necessary to state in the complaint any extrinsic fact for the purpose of showing the application to the plaintiff of the defamatory matter, but the plaintiff may state in general terms that such matter was published or spoken concerning him.” This is precisely what the plaintiff has done when he alleged in his complaint that the ‘ ‘ letter was published of and concerning the plaintiff ’ ’.
Therefore, the defendant’s contention that “ no indication is given how the letter could have been understood by a reader to charge plaintiff ’ ’ is immaterial. On the trial, of course, as a *618 matter of substantive law, the plaintiff must show that the defamatory statement referred to him. This would require proof to the effect that the statement was intended by the defendant, or was understood by the recipient, as having reference to the plaintiff (see Gross v. Cantor, 270 N. Y. 93). As a matter of pleading, however, the plaintiff may, as I have said, simply allege in general terms that the defamatory matter was published concerning him. (Morrison v. News Syndicate Co., 247 App. Div. 397; Rooney v. Feinstein, 76 N. Y. S. 2d 77, affd. 274 App. Div. 1004.)
In aid of his contention that an innuendo must be pleaded, the defendant cites three cases. They state, however, in substance, that words not defamatory on their face must be explained by extrinsic evidence or facts (Tracy v. Newsday, 5 N Y 2d 134; Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95; Hays v. American Defense Soc., 252 N. Y. 266). The defendant thus appears to confuse the term 1 ‘ innuendo ’ ’ with the words ‘ ‘ extrinsic facts. ’ ’ An innuendo designates the allegation which sets forth the pleader’s explanation of the alleged libelous words. Its office is to point out the libelous meaning of which the plaintiff claims the words are susceptible (Crashley v. Press Pub. Co., 179 N. Y. 27). An innuendo “ is not an averment of an extrinsic fact ” (Seelman, Law of Libel and Slander in the State of New York, § 420, p. 417) —i.e., a fact which, when examined in the light of words apparently innocent, would convey a libelous accusation.
It should be noted at this juncture that, while the oft-cited case of O’Connell v. Press Pub. Co. (214 N. Y. 352) serves as the source for the proposition that an allegation of special damages is necessary in a ease of libel by extrinsic fact, ‘ ‘ there is little judicial authority for the proposition that the special damage requirement applies to cases requiring an innuendo ” (see Henn, “ Libel-by-Extrinsic-Fact ”, 47 Cornell L. Q. 14, 44, n. 135, citing several recent cases, including Richter v. Columbia Broadcasting System, 17 Misc 2d 220, affd. 10 A D 2d 826, and Stillman v. Paramount Pictures Corp., 1 Misc 2d 108, mod. on other grounds 2 A D 2d 18, affd. 5 N Y 2d 994). The failure of the defendant to recognize the difference between a pleading containing an innuendo, and one setting forth extrinsic facts becomes, therefore, all the more significant. The view that, where an innuendo is pleaded, the plaintiff need not allege special damages is strengthened by .the statement of the Court of Appeals in Hays v. American Defense Soc. (supra, p. 269) that “ [w] ords which are not libelous in themselves cannot be made so by innuendo.”
*619 The defendant argues further that, since the alleged libel is not defamatory on its face, the failure to allege special damages is fatal to the complaint. The precept — that, if a publication is not defamatory on its face, special damages must be alleged in order to plead an adequate complaint — is generally attributed to O’Connell v. Press Pub. Co. (supra). I must say that I have found more than once that the rule there enunciated has led to a great deal of difficulty, if not uncertainty. Seelman stated in his text, Law of Libel and Slander in the State of New York (par. 30, p. 34), that the rule of the O’Connell case was a clear instance of judicial error, by a sharply divided court, without prior support, and not subsequently followed by the Court of Appeals, which should be corrected by it. However, in a supplement nearly 20 years later, the author refers to the O’Connell case as still the law of New York. (Id., par. 45, p. 27, 1933-1959, Supp.). Others have characterized the New York law as doubtful (see “ New York, Libel Per Quod, and Special Damages: An Unresolved Dilemma,” 27 Fordham L. Rev. 405; 1 Harper and James, Law of Torts, p. 373, n. 8, 9; Henn, “ Libel-By-Extrinsic-Fact,” 47 Cornell L. Q. 25 et. seq.; Developments in the Law of Defamation, 69 Harv. L. Rev. 875, 890, n. 96). Considering the obvious caution with which the rule must be applied, and the well-known principle that on an application to dismiss a complaint for alleged inadequacy on its face the pleading must be liberally construed in support of a holding of sufficiency (Condon v. Associated Hosp. Serv. of N. Y., 287 N. Y. 411, 414; Russell v. Marboro Books, 18 Misc 2d 166, 183, 186), the present complaint cannot be dismissed for lack of an allegation of special damages, unless it is plain that the letter is not libelous on its face.
It remains to be seen, therefore, if the publication, as set forth in the complaint, is libelous without the necessity of alleging extrinsic facts. If it is, then special damages are not necessary, and any allegation of extrinsic facts in the complaint are merely precautionary or surplusage. The plaintiff alleges that the “letter intended to charge and was understood to charge by those who read it that the plaintiff was guilty of the commission of the crime of larceny and/or unlawful entry ’ \ I am not sure that I go along with the plaintiff in this interpretation. There is no expression or indication that something was removed from the suitcase or the apartment. Both in respect of larceny (Penal Law, § 1290) and of unlawful entry (Penal Law, § 405) intent to commit a crime is a necessary element of the charge, and there is nothing in the offending letter to substantiate any claim of such intent. It may be that what is truly charged in the writing is a misdemeanor in that the plaintiff, “without authority” *620 from the defendant as the “ owner ” of the apartment, “ intruded ” upon the defendant’s premises (Penal Law, § 2036) — and, for 1 ‘ unlawful intrusion” (assuming that this section is applicable to the present situation), an intent to steal, as in larceny, or an intent to commit a crime, as in unlawful entry, is unnecessary.
But be that as it may, it is not necessary that the letter accuse or impute the commission of a criminal act for it to be held libelous. The basic issue here, it seems to me, is, if given a ‘ ‘ fair reading ’ ’, does the writing, ‘ ‘ taken in its entirety, fairly raise a question as to whether the plaintiff was held up to public contempt and disgrace?” For, “ if so found, such an article is libelous per se without alleging special damages.” (Lasky v. Kempton, 206 Misc. 962, 964, revd. on other grounds 285 App. Div. 1121, quoting Balabanoff v. Hearst Cons. Pub., 294 N. Y. 351, 356.) “ It is not enough that a critic or a malignant may torture the expressions into a charge of a criminal or disgraceful act. Nor is it enough, on the other hand, that a possible and farfetched construction may find an inoffensive meaning in the language.” (More v. Bennett, 48 N. Y. 472, 476, also quoted in Lasky v. Kempton, supra.)
I think that it can fairly be inferred — from the plain language of the published communication — that there was someone without authority who had a key to the defendant’s apartment and that the apartment was entered by that someone without being authorized so to do. Giving the letter a natural reading according to its tenor, it is clear that it refers to an alleged entry into the defendant’s apartment by one who had no right to enter, by the use of a key thereto by one who had no right to have it. There is no doubt in my mind that such a statement would tend to degrade the person of whom it is written ‘ ‘ in the estimation of the community, [and] to deprive him of public confidence and the temporal advantages which naturally result from a reputation for honesty.” It is, therefore, libelous on its face (Sanderson v. Caldwell, 45 N. Y. 398, 402; Mooney v. New York News Pub. Co., 48 App. Div. 271).
One’s home, although merely rented, is still his castle — entitled to remain impregnable to and uninvaded by the unwanted or the outsider. Indeed, the modern cliff-dweller in this metropolitan area is generally known to desire — sometimes even over the landlord’s objections — to affix his own lock to the outer door of his apartment, for the very purpose of protecting the privacy of his own abode, particularly, it may be, from the employees of the landlord. To charge, in effect, as did the defendant here, that the plaintiff, an employee in the general *621 tenement, surreptitiously had a key to the plaintiff’s personal premises and unauthorizedly went into them — to the extent that the matter should be investigated for the security of all the tenants and that the lock should be changed — would normally and naturally tend to make that employee a hazard to his employer, a pariah among his coworkers and certainly cause him to be looked upon askance by the other tenants of the building. Thus, this is a charge that disparages the plaintiff in his employment and occupation and, in my view, is libelous per sc.
As stated in Moore v. Francis (121 N. Y. 199, 203), the “ cases of actionable slander were defined by Chief Justice DeG-rey, in the leading case of Onslow v. Horne (3 Wilson 177), and the classification made in that case has been generally followed in England and this country. According to this classification, slanderous words are those * * * (3) which tend to injure a party in his trade, occupation or business And, at page 204, quoting Bayley, J., in Whittaker v. Bradley (7 D & R 649): ‘ ‘ Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade or business, are actionable Being a building service employee, a doorman, is the plaintiff’s occupation, just as was that, for example, of the editor in Jackson v. Consumer Pub. (256 App. Div. 708), the attorney in Kleeberg v. Sipser (265 N. Y. 87), the bank teller in Moore v. Francis (supra), the boxing bout judge in Fleischer v. Champion Sports Pub. Corp. (13 A D 2d 993), the telephone operator in Keating v. Conviser (246 N. Y. 632, affg. 219 App. Div. 836, which revd. 127 Misc. 531).
In short, I hold that the complaint is impervious to attack for insufficiency. The motion to dismiss is denied, and the defendant may answer within 20 days after service of a copy of the order with notice of entry.